CHARLES BLIVEN AND EDWARD B. MEAD, PLAINTIFFS IN ERROR,
*v.* THE NEW ENGLAND SCREW COMPANY.

Where there was a company incorporated for the purpose of making screws,
and they were sued by certain persons with whom they had been in the habit
of dealing, for not supplying a sufficient quantity of the manufactured article,
according to orders which had been given and received, the defence was, that
the supply manufactured was not equal to the demand, and that the plaintiffs
knew that the articles were furnished to customers in regular order, according
to date.

Such custom was not a sufficient defence, unless it was known to the other con-
tracting party, and formed a part of the contract.

Parol evidence of usage is generally admissible to enable the court to arrive at
the real meaning of the parties, who are naturally presumed to have contracted
in conformity with the known and established usage.

But parol evidence of custom and usage is not admitted to contradict or vary
express stipulations or provisions restricting or enlarging the exercise and
enjoyment of the customary right.

*Bliven et al.* v. *New England Screw Company.*

The evidence in this case proved that the plaintiffs knew of the usage of the defendants to supply orders as fast as the articles could be made, and accord-ing to a list kept in a book.

It was correct in the court to construe this evidence, and to instruct the jury that if they believed the evidence, it showed that the plaintiffs were chargeable with notice of the defendants' custom to fill their contracts only in the order in which they were accepted and in proportion with each other, and not in full, according to the strict terms thereof.

THIS case was brought up by writ of error from the Circuit Court of the United States for the southern district of New York.

Bliven was of Westchester county, and Mead of Brooklyn, in the State of New York, and the New England Screw Company were a corporation created by Rhode Island. The suit was brought by Bliven & Mead in the Supreme Court of the State of New York, and removed by the defendants into the Circuit Court of the United States. The Screw Company brought an action* against Bliven & Mead in the Circuit Court, which will be the subject of the case next reported. The suit by Bliven & Mead was against the company for not furnishing them with screws enough; and the suit by the company against Bliven & Mead was to make them pay for what had been furnished. Both suits grew out of the same series of transactions, which are fully stated in the opinion of the court. The judgment of the court below, in both cases, was against Bliven & Mead, and hence both were brought up to this court.

They were submitted on printed arguments by *Mr. Wright* for the plaintiffs in error, and by *Mr. Stoughton* and *Mr. Jenckes* for the defendants in error.

The following were the points made by the counsel, respectively:

*Points for Plaintiffs in Error.*

I. The specific contracts on which the screws for the recovery of the value of which suit was brought, neither of them having been fulfilled, no recovery can be had for the partial performance.

2 Kent's Commentaries, 509.

See Note *a*, and cases cited.

II. The delivery of the full quantity of goods agreed upon cannot be excused by any custom to deliver only a part.

Linsley *v.* Lovely, 26 Vt., (3 Deane,) 123.

Schooner Reeside, 2 Sumner, 567.

III. The custom (as well as the contract) must be mutual. Bliven & Mead might with equal propriety set up a custom, when they order 10,000 gross of screws, to receive but 1,000, as the New England Screw Company, on accepting such order unconditionally, to deliver only the smaller quantity.

Here the custom alleged was all on one side. If screws fell in price, Bliven & Mead were obliged to receive the whole. If the screws rose in value, Bliven & Mead could only claim what the company, in its discretion, saw fit to deliver them. Such rise took place.

See Holford *v.* Adams, 2 Duer, (N. Y.,) 471.

IV. The custom proved was illegal as dangerous, and contrary to the policy of the law.

1. It varied express and written contracts.

Hone *v.* Mutual Safety Ins. Co., 1 Sanford's Superior Court Rep., 137.

The Reeside, 2 Sumner, 569.

2. The delivery of goods at the time and in the quantity expressly agreed on is as obligatory as the payment of money. A debtor's custom to pay his debts "in course, and as far as he consistently can in view of his obligations to his other creditors," will not excuse him from paying his notes given without any such limitation.

V. 1. Custom, to be legal, must be the general custom of the trade, and not, as was this case, the custom of the party only.

2. What was proved was not properly a custom, but was a habit of the defendants in error, to fulfil their obligations only so far as they found it convenient.

VI. If such custom (or habit) could legally be proved, the extent and effect thereof should have been submitted as a

question of fact to the jury under the evidence, and not determined by the court.

The points on behalf of the defendants in error were the following, as taken from the brief of *Mr. Jenckes:*

I. The evidence of the custom of the New England Screw Company to fill orders in part only was properly admitted under the general rules as to the admissibility of evidence of customs and usages.

These rules have been fully established in this court.

"Evidence of this character is received for the purpose of ascertaining the sense and understanding of parties by their contracts, which are made with reference to such usage or custom, for the custom then becomes a part of the contract, and may not improperly be considered the law of the contract," &c.

Renner *v.* Bank of Columbia, 9 Wheaton, 581, citing Yeaton *v.* Bk. Alexandria, 5 Cranch, 49.

Mills *v.* Bank of U. S., 11 Wheaton, 431.

Bank of Washington *v.* Triplet et al., 1 Pet., 25.

Van Ness *v.* Packard, 2 Pet., 137.

Cookendorfer *v.* Preston, 4 How., 324.

Bowling *v.* Harrison, 6 How., 258.

Adams *v.* Otterback, 15 How., 544.

And in the Circuit Courts of the United States—

Trott *v.* Wood, 1 Gallison, 442.

The Reeside, 2 Sumner, 569.

See, also, the following text-writers:

1 Black. Com., 75.

2 Stark. on Evidence, 258.

1 Phill. on Evidence, 556.

2 Greenleaf on Evidence, secs. 251, 252.

Smith's Merc. Law, 29, 30, and note.

And the following cases:

Gabbay *v.* Lloyd, 3 Barn. and Cres., 793.

Stewart *v.* Cautty, 8 Mees. and Wels., 160, citing Perly *v.* Royal Exch. Co., 1 Burr, 341.

Ougier *v.* Jennings, 1 Camp., 505.

Palmer *v.* Blackburn, 1 Bing., 61.

Yeates et al. *v.* Pim et al., 1 Holt., 92.

Noble *v.* Kennoway, Doug., 510.

Loring *v.* Gurney,.5 Pick., 15.

Naylor *v.* Semmes, 4 G. and J., 274.

II. The contracts for the sale of screws by the defendant company were subject to the custom of the defendant company, to fill the same in part only.

1. Because it was a usage of trade.

The defendant company were the only manufacturers of gimlet or sharp-pointed screws in the world, at the time of making the contract. Any usage or custom, therefore, which they had established, which was "known, certain, uniform, reasonable, and not contrary to law," was the usage and custom of the trade. This usage was, and was well known to be, to fill orders in part only; and the contract with the plaintiffs was made subject to and controlled by this custom.

See the following authorities:

Renner *v.* Bank of Columbia.

Mills *v.* Bank of United States.

Van Ness *v.* Packard.

Cookendorfer *v.* Preston.

Bowling *v.* Harris.

Adams *v.* Otterback, as cited above.

2 Greenleaf on Evidence, secs. 251, 252, and notes.

Stewart *v.* Cautty, *ubi sup.*

2. Because it was the usage of an individual, and the plaintiffs, having dealt with the defendant company, and corresponded with them, were chargeable with notice; and in this case, the evidence showed that they had actual notice.

See, also, as to the law governing the usage and habit of trade of an individual, the following authorities:

2 Greenleaf on Evidence, secs. 251, 252.

Loring *v.* Gurney, 5 Pick., 15.

Naylor *v.* Semmes, 4 G. and J., 274.

Noble *v.* Kennoway, Doug., 510.

Mr. Justice CLIFFORD delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the southern district of New York.

According to the transcript, the suit was originally instituted in the Supreme Court of the State of New York by the present plaintiffs, who were citizens of that State; but was afterwards regularly removed, under the twelfth section of the judiciary act, into the Circuit Court of the United States, because the corporation defendants were citizens of the State of Rhode Island.

It was an action of assumpsit, brought to recover damages for the supposed breach of six separate and distinct contracts, in which the defendants, as was alleged in the declaration, stipulated to deliver to the plaintiffs, pursuant to their written orders given at sundry times, certain quantities of screws, usually denominated wood screws, of various sizes and descriptions, as were therein specified. Readiness to perform on the part of the plaintiffs, and neglect and refusal on the part of the defendants to deliver the goods, after seasonable demand, constituted the foundation of the respective claims for damages, as alleged in the declaration. Those claims are set forth in eighteen special counts, to which are also added the common counts, as in actions of indebitatus assumpsit. Of the several contracts, the first is alleged to have been made on the seventh day of October, 1852, and the last on the nineteenth day of April, 1853.

At the May term, 1855, the parties went to trial upon the general issue. To prove the several agreements, the plaintiffs relied on certain correspondence which had taken place between the parties upon this subject, consisting of letters written by the plaintiffs to the defendants, in the nature of orders or requests for the goods, and the replies thereto written by the defendants.

As appeared by the proofs, the plaintiffs were merchants, engaged in buying and selling hardware, and the defendants were engaged in manufacturing the description of goods specified in the declaration. They were in point of fact the sole manufacturers of the article in the United States, and were constantly receiving orders for the article from their customers

faster than they could fill them, and for larger quantities than they were able to produce.

Orders had been given for this article by the plaintiffs prior to the date of this controversy; but the evidence in the case does not show when their dealings commenced. Six orders of like import were given by the plaintiffs, during the fall of 1852 and the early part of the year 1853, for large quantities of the article, of various sizes and description. This suit was brought to recover damages for not filling those orders, which, it is insisted by the plaintiffs, had been accepted without any reservation. Some of them had been filled in part only, and others had not been filled for any amount, when the suit was commenced.

It was denied by the defendants that the orders had been accepted without condition. On the contrary, they insisted that the plaintiffs well knew that the supply was greatly less than the demand, and that the orders were only accepted to be filled in their turn, as the defendants were able to produce the article.

To support the first three counts of the declaration, the plaintiffs, among other things not necessary to be noticed, introduced three letters—two from themselves to the defendants, and the reply of the defendants to the same. Reference will only be made to such brief portions of the correspondence as appear to be essential to a proper understanding of the legal questions presented in the bill of exceptions.

Dissatisfaction was first expressed by the plaintiffs in their letter dated on the 30th day of September, 1852. In that communication, they simply refer to the long delay that has occurred in filling their orders, and furnish a memorandum of the amount and sizes of the article claimed by them to be due and not delivered, under their order of the 29th of June of the same year. They state, that after three months' delay, only about one and one-fourth per cent. of the same has been filled, and that they have not a gross of screws under an inch in their stock. Request was also made in the same communication that the plaintiffs would send at once all they could of the article, and the balance of the same as soon thereafter as

it was possible. That request was, in effect, repeated in another letter, written on the 5th day of October, 1852; and on the 17th day of the same month, the defendants replied, saying that the order referred to would be taken up at the earliest possible day.

No further correspondence applicable to the first three counts was introduced by the plaintiffs in the opening of the case.

They then gave evidence to prove the second agreement, as alleged in the fourth, fifth, and sixth counts of the declaration. For that purpose, they introduced two letters—one from themselves to the defendants, dated on the 15th day of October, 1852; and the other from the defendants to them in reply, dated on the following day. Their letter to the defendants contained an order for three thousand seven hundred and fifty gross of screws, half to be delivered by the 15th day of March then next, and the other half a month later, subject to the regular discount at the time of delivery. That order was given thus early, as the plaintiffs stated, with a view to avoid thereafter the inconvenience they had suffered from not having their orders filled, and because they anticipated a short supply of the article the next season. In the same letter, they informed the defendants that it was given as an additional order, and requested that those previously sent might be filled without further delay.

To that communication the defendants replied, acknowledging its receipt, and saying that the order had been entered in their books, to be executed at the times named. They also referred to the previous orders, saying they would do what they could to fill them before navigation closed on the canals; but added, that they could only take them up in course, as they had a great many orders from other parties in the same condition.

Evidence was then offered by the plaintiffs to prove the third agreement, as alleged in the seventh, eighth, and ninth counts of the declaration. To support those counts, two letters were introduced —one from the plaintiffs to the defendants, dated the 4th day of November, 1852; and the reply of

the defendants to the same, which was dated on the sixth day of the same month.    By the letter first named, the defendants were furnished with another order of the plaintiffs for an additional quantity of screws, and were requested to place the order in their books, to be filled as fast as possible, at a given rate.    Previous orders were also referred to in the same letter, and the plaintiffs complain that they have not been filled in their turn; adding, that they have not a gross of gimlet-point screws in their store, and earnestly requested the defendants to send them a lot by steamboat on the following day.    Two days afterwards, the defendants acknowledged the receipt of the order, and informed the plaintiffs that it had been entered in their books, to be taken up in course.

Those letters constitute the only evidence offered by the plaintiffs in the opening to prove the third agreement.

They then gave in evidence another order from themselves to the defendants, to prove the fourth agreement, as alleged in the tenth, eleventh, and twelfth counts of the declaration.    It was dated on the 7th day of November, 1852.    In the same communication, they stated that they were in great want of a certain description of screws, and expressed the hope that the plaintiffs would send what they could of the article by steamboat without delay, adding: "We have always said, send what you can of our orders as fast as you get a case or two ready, or to that effect."    To that letter the defendants replied, under date of the 19th of the same month, saying that the best they could do was to enter the order, to be taken up in course, intimating that perhaps it might be accomplished in about two months.

Similar evidence was given to prove both the fifth and the sixth agreements, as alleged in the six remaining counts of the declaration.    Two orders given by the plaintiffs were introduced for that purpose.    One was dated on the 10th day of February, 1853, and the other on the 19th day of April, of the same year.    They were each for twenty thousand gross of screws; and the defendants were requested to enter the orders in their books, to be filled as soon as possible after they should have completed those previously given    Separate

answers were given by the defendants to each of these orders, to the effect that they would be entered in the books of the defendants, to be taken up in course or in their turn, and be filled when they reached them, as far as they should be able to do so, consistently with their obligations to other customers.

No part of the two orders last named had been filled when this suit was commenced. Demand was made of the defendants, on the 30th day of September, 1853, for the delivery of such proportions of the several orders as had not been previously filled. At the same time, the plaintiffs rendered their account, and tendered to the defendants their promissory notes for the respective sums which would become due to the defendants on making such delivery.

Such was the substance and effect of the evidence introduced by the plaintiffs in the opening, so far as it is necessary to consider it at the present time. Many other matters were stated in the correspondence; but as they are not material to this investigation, they are omitted.

To maintain the issue on their part, the defendants, among other things, introduced a letter from the plaintiffs, addressed to them, dated on the 3d day of September, 1852, in which inquiry was made of the defendants why they did not fill the orders given by the plaintiffs. They also stated in the same letter that not a week passed without their hearing of the defendants taking and executing orders from other customers; but admitted in effect that they had long since been given to understand the rule of business adopted by the defendants in that behalf, and only complained that precedence was given to the first orders from other customers.

Testimony was also introduced by the defendants, that they had some five hundred customers, and that the orders of the plaintiffs had been taken up and filled in proportion to the orders given by other customers, as the defendants manufactured the article and were able to deliver the goods. To that testimony the plaintiffs objected; but the court overruled the objection, and it was admitted, and the plaintiffs excepted.

All of the orders given by the plaintiffs, except the two last named, were filled in part, and, as the defendants proved, in

due proportions to the orders of other customers, as the article was produced. They also proved, that when orders were given and accepted without the price of the article being agreed, it was their custom, and according to the usage of their business, to charge at the rates ruling at the time of the delivery; and if during the interval the discount from fixed rates had increased, the purchaser had the benefit of the allowance; but if prices had risen, and the discount was less, then the purchaser paid according to the increased price. To this testimony, as to the usage of the defendants' business, the plaintiffs objected, but the court overruled the objection; and the testimony having been admitted, the plaintiffs excepted. That practice, however, was not applicable to customers who were not duly notified of the usage, but all such had their orders filled at former rates. Orders from other customers were received by the defendants throughout the period of these transactions, but they refused to accept orders from new parties.

Proof was also offered by the defendants, tending to show that the profit to the manufacturer was less upon the small sizes of the article than upon the large, and it was admitted by their counsel that the market price of the goods advanced after the orders of the plaintiffs were given. Much additional testimony was introduced on the one side and the other, to which it is not necessary to refer, for the reason that it presents no question for the decision of this court. On this state of facts, the presiding justice instructed the jury to the effect that the several contracts for the sale of the goods by the defendants to the plaintiffs were subject to the custom of the defendants to fill the same in part only, and that the plaintiffs, from having been dealers with the defendants, and from the correspondence between them, were chargeable with notice of the defendants' custom to fill their contracts only in the order they were accepted, and in proportion with each other, and not in full, according to the strict terms thereof. Under the rulings and instructions of the court, the jury returned their verdict for the defendants, and the plaintiffs excepted to the instructions. Exception was taken to two of the rulings of

the court and to each of the instructions to the jury, but they present only one question for decision, and therefore may well be considered together. No evidence of general usage or custom in the ordinary sense of those terms was offered in this case, and no question touching the general rules of law upon that subject is presented for the decision of this court. It may also be safely admitted that the custom of a party to deliver a part of a quantity of goods contracted to be delivered, though invariable, cannot excuse such party from a full compliance with his contract, unless such custom is known to the other contracting party, and actually enters into and forms a part of the contract. Mere knowledge of such a usage would not be sufficient, but it must appear that the custom actually constituted a part of the contract. But when it appears that such custom was well known to the other contracting party as necessarily incident to the business, and actually formed a part of the contract, then it may furnish a legal excuse for the non-delivery of such a proportion of the goods as the general course of the business and the usage of the seller authorize, for the reason that such general usage, being a part of the contract, has the effect to limit and qualify its terms. Linsley *v.* Lovely, 26 Vt., 137. Customary rights and incidents, universally attaching to the subject matter of the contract in the place where it was made, are impliedly annexed to the language and terms of the contract, unless the custom is particularly and expressly excluded. Parol evidence of custom, consequently, is generally admissible to enable the court to arrive at the real meaning of the parties, who are naturally presumed to have contracted in conformity with the known and established usage. But parol evidence of custom and usage is not admitted to contradict or vary express stipulations or provisions restricting or enlarging the exercise and enjoyment of the customary right. Omissions may be supplied, in some cases, by the introduction of the custom, but the custom cannot prevail over or nullify the express provisions and stipulations of the contract. 2 Add. on Con., 970. Proof of usage, says Mr. Greenleaf, is admitted either to interpret the meaning of the language of the contract, or to ascertain the

nature and extent of the contract, in the absence of express stipulations, and where the meaning is equivocal or obscure. 1 Greenl. Ev., sec. 292. Its true and appropriate office is to interpret the otherwise indeterminate intention of the parties, and to ascertain the nature and extent of their contracts, arising not from express stipulations, but from mere implications and presumptions, and acts of a doubtful or equivocal character. The Reeside, 2 Sum., 564. Nothing can be plainer than the proposition, that the evidence in the case proved that the supply with the defendants was much less than the demand of their customers. To avoid dissatisfaction, therefore, they were obliged to devise some system which would enable them to do equal justice among those who were properly competing for the article. Accordingly, they adopted a rule to accept all such requests, and to enter the list in a book kept for the purpose, and to fill them as far as possible in the order they were received. They had been in business for some time, and that rule had become the custom of their trade, and, as such, was well known to the plaintiffs during all the time of these transactions. Many of their orders thus given at short intervals had been expressly accepted to be filled in turn or in course, and the correspondence plainly showed that the plaintiffs well knew what was meant by those terms. Evidence to prove that the orders had been taken up in turn, and filled in proportion to the orders given by other customers, was therefore admissible, in order to show that the defendants had fulfilled their contract, and done no injustice to the plaintiffs; and it is equally clear that evidence to show what had been the usage of the defendants' business was also admissible, because that usage constituted an essential part of the several contracts which were the subjects in controversy. Renner *v.* Bank of Columbia, 9 Wheat., 588. After what has been remarked, one or two additional observations respecting the instructions given to the jury will be sufficient. Written evidence, as a general rule, must be construed by the court, and the first instruction was confined to that purpose. It gives the true exposition of the correspondence, and therefore is not the subject of error. It is insisted by the counsel of the plain-

tiffs that the second instruction withdrew the evidence of notice from the consideration of the jury.

We think not, and for two reasons. In the first place, it was the proper duty of the court to construe the correspondence, and that of itself was sufficient to justify the charge. But the charge must receive a reasonable interpretation. In effect, the jury were told that the evidence, if true, showed that the plaintiffs had notice of the custom of the defendants in regard to the filling of the orders. It did not withdraw the question as to the credibility of the witnesses from the consideration of the jury, and that was all that could properly be submitted to their determination. In view of all the circumstances, we think the exceptions must be overruled. The judgment of the Circuit Court is therefore affirmed, with costs.