NOYES v. MARLOTT et al.

(Circuit Court of Appeals, Ninth Circuit. November 4, 1907.)

No. 1,438.

1. LOGS AND LOGGING—SALE OF LOGS—TRANSFER OF TITLE AS BETWEEN PARTIES—DELIVERY.

Plaintiffs entered into a contract with defendant to fell, cut, raft, drive, and deliver a certain number of feet of logs of specified dimensions and quality in a slough extending from a river, where defendant agreed to construct a boom for their detention, to remove them to the banks of the river or to the mill, and at the time of such removal to scale the same and pay for each thousand feet so delivered and removed to the banks of the slough or the mill, "and not otherwise." A portion of the logs were so delivered, removed, and paid for; but the remainder, after being delivered into the boom, were carried away by a freshet and lost. *Held,* that, plaintiffs having done all that they were to do, complete possession and title to the logs thereupon passed to defendant, and he became liable for the purchase price on proof of the quantity delivered, and that they conformed to the requirements of the contract as to dimensions and quality.

2. SAME—CONSTRUCTION OF CONTRACT.

A provision, in a contract for the sale and delivery of logs to be scaled after delivery, that they shall be of merchantable timber, is not a warranty that all logs delivered thereunder are merchantable, but merely furnishes a description for the identification of such logs as fall within the contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Logs and Logging, § 104.]

156 F.—48

**3. EVIDENCE—PAROL EVIDENCE TO VARY WRITING—CONTRACT OF SALE.**

Where the provisions of a written contract of sale are clear and intelligible, parol evidence of prior conversations between the parties is not admissible to prove an intention inconsistent with the writing.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 1787, 1793.]

**4. SAME—EXISTENCE OF CUSTOM.**

Where the provisions of a written contract of sale are clear and unambiguous, they cannot be changed or affected in meaning by proof of a custom at variance therewith.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 1945–1952.]

In Error to the District Court of the United States for the Third Division of the District of Alaska.

Bion A. Dodge, Louis K. Pratt, and Jacob Samuels, for plaintiff in error.

McGinn & Sullivan, J. C. Campbell, W. H. Metson, Frank C. Drew, C. H. Oatman, and J. A. Mackenzie, for defendants in error.

Before GILBERT, Circuit Judge, and DE HAVEN and HUNT, District Judges.

HUNT, District Judge. Defendants in error, Marlott, Melvin, and O'Mealey, brought this suit to recover the contract price of certain logs alleged to have been delivered by them to Noyes, plaintiff in error, in accordance with the provisions of a certain written contract entered into on September 23, 1904. The contract is substantially as follows:

"This agreement made this 23d day of September, 1904, by and between Fred G. Noyes, party of the first part, and Tony O'Mealey, John Melvin, and Arthur Marlott, parties of the second part, witnesseth: (1) That said parties of the second part agree to fell, cut, raft, drive and deliver not less than six hundred thousand (600,000) feet of logs of the approximate dimensions hereinafter described, in the channel or slough of the Chena river, a tributary of the Tanana river, in the district of Alaska, leaving said river, immediately below the unincorporated town or settlement of East Fairbanks, about a quarter of a mile above and opposite the town of Fairbanks, in the district of Alaska, Third Division, and to furnish all necessary provisions, tools, tackle, apparel and booms for the purpose thereof. Two hundred thousand (200,000) feet of such logs shall be so delivered immediately after the clearing of the ice from the said Chena river, and the said slough, in the spring of 1905; and two hundred thousand (200,000) feet more shall be so delivered within thirty (30) days thereafter; and the remainder of two hundred thousand (200,000) feet shall be so delivered within sixty (60) days thereafter. 15 per centum of said logs shall be 12 feet in length. 10 per centum of said logs shall be 14 feet in length. 25 per centum of said logs shall be 16 feet in length. 10 per centum of said logs shall be 18 feet in length. 10 per centum of said logs shall be 20 feet in length. 5 per centum of said logs shall be 22 feet in length. 5 per centum of said logs shall be 24 feet in length. 5 per centum of said logs shall be 26 feet in length. 5 per centum of said logs shall be 30 feet in length. 5 per centum of said logs shall be 36 feet in length. 5 per centum of said logs shall be 40 feet in length. All logs shall not be less than nine (9) inches in diameter at the smaller end, and shall be from three (3) to six (6) inches longer than the above-prescribed lengths; and in all respects shall be cut and trimmed in a workmanlike manner, of good form and of firm, sound and merchantable timber. The said party of the first part shall provide in the slough departing from the Chena river into which said logs shall be diverted, as aforesaid, the necessary boom for the arresting and detention

of said logs, and shall remove them to the banks of said slough or to the mill, for the purpose of manufacturing the same into lumber, and at the time of such removal from said slough, shall scale them by 'Scribner's Rule,' at which time the said party of the first part shall pay to the said parties of the second part the sum of twenty dollars for each and every thousand of the logs so delivered in said boom and pulled therefrom to the banks, as aforesaid, or in the mill, for the purpose of manufacturing, as aforesaid, and not otherwise."

The answer admitted the agreement as set forth in the complaint, set up failure to fulfill the terms of the contract, and pleaded that about June 20, 1905, continuous and unprecedented rainfalls occurred, that extraordinary rise of the waters of the country thereabouts followed, and that the banks of the river and slough were cut away by the torrents of water, and the retaining boom, which had been erected by plaintiff in error, was washed out, and the logs called for by the contract were carried away without fault of the plaintiff in error.

It appears that about June 4, 1905, defendants in error had delivered into the detention boom of the plaintiff in error about 250,000 feet of logs, which were thereafter drawn from the slough by plaintiff in error, and defendants in error were given credit for the amount of feet ascertained. Thereafter, about June 29, 1905, the second drive of logs was made, and about 369,501 feet were put into the boom by defendants in error. On June 30th, the waters of the river began to rise, the boom which had been provided by plaintiff in error for the arrest and detention of the logs gave way, and the logs remaining in the slough were swept down the river and lost. The plaintiff in error had paid upon the contract price of the logs $8,047.40, and, upon trial had before a jury, verdict was rendered in favor of the defendants in error, plaintiff's below, for $5,083.02, balance claimed to be due. Judgment was entered accordingly. Motion for a new trial was denied. Plaintiff in error brings the case to this court by writ of error.

The record discloses that counsel for plaintiff in error tried the case upon the theory that the only feature of the contract to which the jury's attention should be addressed was that of a delivery; that is to say, he stood upon the proposition that the contract was executory, and that title to the logs did not pass until inspection, measurement, and pulling on to the banks. Defendants in error contended that they performed all of the acts required of them in the contract; that they put in the slough and boom designated in the contract the number, kind, and character of logs specified; that nothing was left for them to do; that plaintiff in error was to remove the logs from the slough, and to scale them, but that this was merely a means of determining the amount of compensation due to defendants in error for the logs; and that, as delivery had been made as required, title to the logs passed to plaintiff in error; hence that the peril to which the logs were exposed was plaintiff's.

The question, then, is: What was the effect of the contract of sale? Did the bargain amount to an actual sale, or was it only an executory agreement? If Noyes became the owner of the logs delivered into the channel or slough of the Chena river, where he had erected a boom to arrest and detain them, and they were afterwards lost, he

must be the sufferer. If, on the other hand, Marlott and his associates, whom we will call the loggers, had not parted with title, if they remained the owners of the logs until Noyes had pulled them out to the banks, and had scaled them for manufacturing purposes, then the contract was an executory one, and the loggers must bear the loss of the freshet.

Whether the logs passed or not is dependent upon the intention of the parties to the written contract, and that intention must be gathered from the language of the instrument and the subject-matter. In the ascertainment of the intention of the parties, we should consider, too, certain established legal rules. Thus, in The Elgee Cotton Cases, 22 Wall. 180, 22 L. Ed. 863, the court, in discussing executory and conditional sales, approved Benjamin's text by quoting the following rules laid down by Blackburn on Sales, and added to by Benjamin:

"First. 'When, by the agreement, the vendor is to do anything to the goods for the purpose of putting them into that state in which the purchaser is bound to accept them, or, as it is sometimes worded, into a deliverable state, the performance of those things shall, in the absence of circumstances indicating a contrary intention, be taken to be a condition precedent to the vesting of the property.'

"Second. 'Where anything remains to be done to the goods for the purpose of ascertaining the price, as by weighing, measuring, or testing the goods, where the price is to depend on the quantity or quality of the goods, the performance of these things shall also be a condition precedent to the transfer of the property, although the individual goods be ascertained and they are in the state in which they ought to be accepted.'

"Third. 'Where the buyer is by the contract bound to do anything as a consideration, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer.'"

And later on in the opinion the court distinguished the doctrine of the first and second rules by citing numerous English cases, and saying for itself:

"Of course, when nothing remains for the seller to do, when the weighing or measurement stipulated for is incumbent upon the buyer, or when the parties have provisionally agreed that a certain sum shall be taken for the price, subject to future correction, the contract is not within the rules. Turley v. Bates, 2 Holstone & Coltman, 200, has sometimes been thought a departure from the earlier cases, but we think without reason. It was the case of the sale of an entire heap of fire-clay at two shillings per ton. The buyer was to cart it away and weigh it. He weighed, removed, and paid for a part, and refused the rest. It was held the property of the whole heap had passed to him. But here the seller had nothing to do with the weighing or delivery. He had performed all he was required to do, either for ascertaining the quantity or the price. Besides, the jury had found as a fact that the sale was of the whole heap. The case of Kershaw v. Ogden, 3 Holstone & Coltman, 717, is in substance the same. In each of these cases the contract was in parol, and what it was necessarily for a jury."

Tested by these rules, the contract under consideration passed the ownership of the logs delivered in the slough when the loggers put them there. Hatch v. Oil Co., 100 U. S. 124, 25 L. Ed. 554.

An ascertainment of the amount to be due was contemplated, but the loggers only undertook to deliver the quantity and kind of logs that they proved were put into the slough, as designated in the con-

tract. Referring to the language of the contract, it will be observed that the loggers were "to fell, cut, raft, drive and deliver" logs of certain dimensions and quality as specified. They did all these things and transferred complete title, possession, and control to Noyes. By the contract, the loggers were to furnish merchantable timber, but that provision was not a warranty of the logs on the part of the loggers, but was rather a provision for the benefit of the loggers and Noyes, sellers and purchaser, respectively, furnishing a description of what was bought and sold. When a contract very similar to the one we have before us was examined by the Supreme Court, it was said:

"Merchantable logs only were bought and sold by the parties, but it is a great mistake to regard that provision as a warranty of the logs on the part of the plaintiffs. Unless the parties were destitute of all experience, they must have known that in so large a lot of logs there would be some, and perhaps many, that would not scale as merchantable; and it was doubtless from that consideration that the provision was inserted, that the defendants should take all of that description, and, of course, they were not bound to take any of inferior grades. Regarded in that light, it is evident that the provision was for the benefit of both the seller and purchaser, as it furnished a clear and unmistakable description of what was bought and sold—we say bought and sold, because it is evident from what has already been said that the title to the logs passed to the defendants." Leonard et al. v. Davis et al., 1 Black (U. S.) 476, 17 L. Ed. 222.

Noyes, the buyer, had constructed the boom to detain the logs, as he agreed to do, and from the time of the delivery in the slough he possessed and owned them. Ludwig v. Fuller, 17 Me. 166, 35 Am. Dec. 245. By the contract, Noyes was to remove the logs for manufacturing purposes. He was to remove and scale them, and was then to pay $20 for every thousand of the logs that had been delivered by the loggers into the detention boom. But everything the loggers, as sellers, had to do with the logs, was completed when they delivered into the slough. Leonard v. Davis et al., supra. After delivery, their only interest was in recovering the price agreed upon when the measurement was ascertained by Noyes, the purchaser.

A circumstance in the case to show that there was no condition in the sale is the fact that, after the logs in the first drive had been delivered in the slough, Noyes employed the loggers, defendants in error, to help him pull the logs onto the bank, and paid them daily wages for such service.

Stress is laid by plaintiff in error upon the words "and not otherwise," which conclude the provision of the contract defining the obligation of Noyes. But this phrase only emphasizes the immediately previously fixed and limited method of ascertaining a settlement of accounts. No other method was to be allowed. We do not think it can be regarded as qualifying the sale itself by making it conditional upon Noyes hauling the logs out and scaling them. In trusting to Noyes to ascertain the quantity of logs for which he was to pay, the loggers displayed confidence in him, but the sale was not affected, for the sellers had nothing to do to put the property into deliverable shape. It had been completely delivered. King v. Jarman, 35 Ark. 190, 37 Am. Rep. 11; Albemarle Lumber Co. v. Wilcox, 105 N. C. 34, 10 S. E. 871.

In Macomber v. Parker, 13 Pick (Mass.) 183, it was said:

"Where any operation of weight, measurement, or counting, or the like, remains to be performed, in order to ascertain the price, the quantity or the particular commodity to be delivered, and to put it in a deliverable shape, the contract is incomplete until such operation is performed; but, where the goods or commodities are actually delivered, that shows the intent of the parties to complete the sale by the delivery, and the weighing, measuring, or counting afterwards would not be considered as any part of the contract of sale, but could be taken to refer to the adjustment of the final settlement as to the price."

Plaintiff in error argues that, even if the court finds the contract was not a conditional one, still it was fairly susceptible of two interpretations, and that therefore explanatory evidence was admissible. Relying upon this premise, he has assigned error because the trial court denied an offer to prove conversations that were had between the loggers and Noyes that led up to the execution of the contract, and an offer of proof that when the contract was presented to the loggers for signature they demurred to signing it because it did not provide for delivery in the slough or boom alongside of the bank, whereupon Noyes told them that he would not be responsible for the logs in the slough or until they were pulled from the water, and they could sign the contract or not.

But if the court can ascertain from the language of the writing itself what the parties meant, then evidence of language employed before they expressed their intention in writing is on principle immaterial. United States v. Bethlehem Steel Co., 205 U. S. 105, 27 Sup. Ct. 450, 51 L. Ed. 731. Our duty is to find out the true sense of the written words as the parties have used them, and then, as heretofore held, when that true sense is ascertained, test the writing in the light of established legal rules. If the agreement before us had been incomplete or unintelligible, explanation not inconsistent with its written terms would have been perfectly competent; but, as the writing is complete and intelligible, parol evidence of prior conversations to prove the intention of the parties inconsistent with its ascertained meaning was not proper. We are not losing sight of the necessity for interpretation, according to the subject-matter referred to in a contract, and of surrounding circumstances, and of the admissibility of verbal testimony in order to find out the subject to which a writing refers; but parol evidence to explain the nature of the subject of a written instrument is very different from evidence of verbal communications respecting the contract itself. A familiar illustration is where parol evidence is admitted to show that land in a deed is described as in one locality, while it really lies in another; or, where a factory has been conveyed as a factory, it is permissible to receive verbal testimony to show what part or parcel is passed by the deed. Greenleaf on Evidence, c. 15. Here the instrument does not present ambiguity in the true sense and meaning of the words themselves, or such difficulties as to their application as to have warranted investigation by evidence outside of the paper itself. We must therefore sustain the ruling of the lower court in rejecting the offer made.

Effort was also made by plaintiff in error to prove that a general cus-

tom existed among loggers and sawmill men in the Tanana Valley, whereby logs delivered at a mill are at the risk of the loggers and remain so until pulled from the water and scaled, and the amount determined; but the court sustained the objections of defendants in error and refused to allow such evidence. Plaintiff in error seeks to apply the rule that customary rights and incidents universally attaching to the subject-matter of a contract, where it is made, are annexed by implication to the language and terms of the contract, unless custom is expressly excluded. But the doctrine of evidence of custom cannot prevail over the express provisions of a contract. "Its true and appropriate office is to interpret the otherwise indeterminate intention of the parties, and to ascertain the nature and extent of their contracts arising, not from express stipulations, but from mere implications and presumptions and acts of a doubtful or equivocal character." Bliven et al. v. New England Screw Co., 23 How. 420, 16 L. Ed. 510. It is enough to say that the real meaning of the contract, as interpreted by the words used, provided for a delivery at a particular place, and was not indeterminate, and therefore evidence of custom was irrelevant. Barnard v. Kellogg, 77 U. S. 383, 19 L. Ed. 987.

Other points of a minor character were made by plaintiff in error. They have been examined, and are largely covered by what we have already said. None appear to be well taken.

In conclusion, we believe that the proper construction of the contract is that the parties intended that Noyes should become the owner of the logs when actually delivered into the slough, and that, from the time of delivery so made, he was the owner and could have recovered the property, had it been attached under writ issued in an action brought by a creditor of the loggers. Accident was hardly contemplated; but, when it occurred, by the rules of law the owner must be the sufferer.

The judgment is affirmed.