COOK v. ROBINSON (FAIRBANKS BANKING CO., Garnishee).

(Fourth Division. Fairbanks. January 9, 1911.)

No. 1528.

ASSIGNMENTS (§ 39*)—SUFFICIENCY OF DELIVERY—GARNISHMENT.

The defendant was indebted to his two employés, the Howards, in the sum of nearly $6,000 for salaries and wages long over-due. He had just finished a "clean up" at his mine, and had about money enough to pay them. He told them he would give them the gold dust in payment of their claims, to which they consented, and requested him to take the money to the Fairbanks Banking Company's bank and deposit it for them, which he agreed to do. He came to Fairbanks on Sunday, but found the officer of the bank and delivered the gold dust to him and told him to deposit it for the Howards. Garnishment was served on the bank next morning before banking hours. The bank is-sued the certificates of deposit to the Howards, and answered that it had no money or property belonging to the defendant Robinson. On supplementary proceedings in support of the writ, *held,* the title was transferred to the Howards by the delivery to the bank officers at their request by Robinson, and the gold dust was their property, and not that of Robinson, when the writ was served on Monday morning.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 75; Dec. Dig. § 39.*]

This is a supplemental proceeding to an action instituted by Henry Cook, to recover from the defendant Robinson the sum of $10,950.

The complaint in the above-entitled action was filed in this court on the 18th day of July, 1910, and the Fairbanks Banking Company, a corporation doing business in the town of Fairbanks, Alaska, was served with a writ of garnishment on the early morning of that date. To the garnishment thus served up-on the Fairbanks Banking Company, the garnishee answered, to which answer the plaintiff excepted, and a hearing was had before this court, at which time the garnishee, after the plaintiff had introduced its testimony, presented a motion to the court to dismiss the action as to the garnishee; judgment by default having been entered against the defendant, Robinson,

by the plaintiff in the meantime. At the conclusion of the hearing, the respective parties, by their attorneys, were given time in which to file briefs.

Stevens, Roth & Dignan, of Fairbanks, for plaintiff.
McGowan & Clark, of Fairbanks, for Fairbanks Banking Co.

OVERFIELD, District Judge. The briefs submitted by the attorneys are concerned only with the gold dust deposited by the defendant, Robinson, with the Fairbanks Banking Company, and which is claimed the property of the Howards.

The attorneys for the garnishee reason and submit authorities on the theory that Robinson, either on the 16th or 17th day of July, 1910, before leaving his claim on Dome creek, disposed of his property in the gold dust in question by having paid the same, to all intents and purposes sold the same, to the Howards, in payment for their wages, covering a period of some three years, during which time they had been working for the defendant, Robinson, on the claim in question, in different capacities, at different rates of wages, but amounting in the aggregate to more than $6,000 at the time.

There is little testimony on this point, and none but that of the defendant, Robinson. The substance of his testimony is: That he told the Howards, before he left for Fairbanks, that they were to have the proceeds of this gold dust, and asked them, at least Mrs. Howard, where he should deposit the money, and in what manner; that he was informed by them to deposit it in the Fairbanks Banking Company, and have issued therefor certificates of deposit, in their respective names, $3,-150 to Mrs. Howard and the balance to L. C. Howard. That at that time Mrs. Howard handed to the defendant, Robinson, at his request, a piece of paper, upon which was written, in her own hand, her name, to be handed to the bank. Upon this testimony, the attorney for the garnishee maintains that the gold dust became the property of the Howards, and, though retained in possession by the defendant, Robinson became at that time a bailee for the purposes of transporting the same to Fairbanks and depositing the same, according to instructions, with the Fairbanks Banking Company.

The brief of the attorneys for the plaintiff attack the position thus taken by the Fairbanks Banking Company, for the reason that the defendant, Robinson, testified on at least two occasions, in depositions taken in this action, that at the time he handed the money to Jackson, on Sunday, July 17, 1910, it then belonged to him. As a matter of fact, the only statement made by Robinson in his testimony that the money was Howard's was when he said, "I asked her (meaning Mrs. Howard) where she wished her money deposited." I think, under the circumstances, the contention made by the attorneys for the plaintiff is the correct one, in that the positive statement of Robinson that the money was his, on a direct question, is to be given greater weight and credit than an indirect remark made by him as to the ownership of the gold dust.

While I have no doubt from the testimony that a conversation between Robinson and the Howards took place upon the claim before the gold dust was brought into Fairbanks, I am of opinion that it amounted to about this: That Robinson said to the Howards that he intended that they should have the proceeds of the gold dust then in his possession, and asked them where he should deposit it, and in what manner or form, to which they replied, "Deposit it in the Fairbanks Banking Company and have certificates of deposit issued to us therefor."

Under this state of facts, I have no doubt Robinson delivered the gold dust to Jackson on the morning of July 17, 1910, and at that time told him that the money was to be deposited to the credit of the Howards, in the manner above mentioned, to which remark Jackson replied, "Come around to-morrow morning, and we will fix the matter up," meaning by that that at that time the gold dust would be weighed, if it were found that it contained black sand and needed reweighing, and he would then receive the slip of paper which Robinson told him he held, containing the name of Mrs. Howard, written by her, and would at that time issue the certificates of deposit.

According to the usual custom at the bank, the gold dust was taken by one of the employés of the bank, whose duty it was, from the gold dust vault, and reweighed some time soon after 9 o'clock on the morning of the 18th, and a slip made out con-

taining the weight of the gold dust, and in the name of C. J. Robinson, no instructions at that time having been given by Jackson to the other employés of the bank that the proceeds of the gold dust was to be placed to the credit of any one other than Robinson, and the employé thus weighing the gold found attached to the poke the name of Robinson, and no doubt recognizing the gold to be the same as that theretofore having come from the same claim, and deposited by Robinson, very naturally supposed that the same was to be deposited to the credit of Robinson.

It appears from the evidence that while the gold dust was being weighed, or had just been weighed, the writ of garnishment was served upon the banking company, and thereafter Jackson ordered the employé, whose duty it was, to issue certificates of deposit for the same to the Howards, according to the direction theretofore given Jackson on the 17th, by the defendant, Robinson.

Under these facts it becomes necessary to decide whether the gold dust, at the time the writ of garnishment was served upon the bank, belonged to the defendant, Robinson. As stated above, the authorities cited by the attorneys for the garnishee are not in point, except as will be hereinafter referred to.

The theory of the attorneys for the plaintiff, as shown by the brief, is that the gold dust did not become the property of the Howards, if at all, until after it was deposited with the garnishee, and their contention is, under the authorities cited, that the property in the gold dust did not pass to the Howards under the facts as above stated, for the reason that the Fairbanks Banking Company had not, at the time of the service of the garnishment upon the bank, notified the Howards of their acceptance of the gold dust for them.

I am of opinion that to this extent the authorities cited by the attorneys for the plaintiff are not controlling. In all the cases cited by them, it will be found, upon examination, that the facts are not similar, in that the party for whom the money or chattel was deposited had neither previously or subsequently either ordered or ratified the thing to be done, while in this case it is patent that the Howards did order and request that

the Fairbanks Banking Company should be the depositary; and when Robinson, in compliance therewith, did actually deposit the gold dust with Jackson, the vice president and manager of the banking corporation, who accepted it for the Howards, the property and ownership in the gold dust at that time, to all intents and purposes, became that of the Howards, subject only that it became necessary, in the regular course of business, that the gold dust be weighed, melted, and the proceeds thereof be credited to the Howards, in the amounts as directed. It is at this point that some of the citations contained in the brief of the attorneys for the garnishee become relevant. They are to the effect that when chattels are placed in a depositary, with the consent and knowledge or subsequent ratification by the person to whom the thing is deposited, with the intention that title shall pass, and there remains something thereafter to be done, as weighing, counting, ascertaining the quantity, etc., an actual transfer of the property therein is made. To this point the following authorities are in point: Mechem on Sales, § 496, and cases therein cited; Noyes v. Marlott et al., 156 Fed. 758, 84 C. C. A. 409; Wadhams & Co. v. Balfour et al., 32 Or. 313, 51 Pac. 642; Hatch v. Standard Oil Co., 100 U. S. 124, 25 L. Ed. 554.

It therefore appears to the court, under the facts and the law, that the gold dust deposited with Jackson, on Sunday, January, 17, 1910, became, at the time it was received by Jackson, the property of the Howards. This by reason of the fact that the bank was under no obligation to accept the trust unless it so desired, and that after the Howards had expressly designated them as such depositary, and Robinson had so notified the bank, and Jackson, its vice president and manager, received the same, then, to all intents and purposes, the gold dust at that time became the property of the Howards, regardless of the fact that there remained at that time some acts to be performed on the part of the bank, in the natural course of their business, before the exact amount could be ascertained and placed to the credit of the Howards.

It may be that, until the defendant Robinson deposited the gold dust with Jackson, the contract between Robinson and

4 A.R.—19

the Howards was executory, and there might be some question as to any right Howards might have had against Robinson, in the event he failed to deposit the same to their account with the Fairbanks Banking Company; but in my opinion, when Robinson so far carried out his intention to place the proceeds of the gold dust to the credit of the Howards, and fulfilled the instructions of the Howards with reference to doing the same, and the Fairbanks Banking Company accepted the gold dust under these express provisions, at that point the contract became executed, so that on the morning of July 18, 1910, when the writ of garnishment was served upon the bank, the property in the gold dust in question had passed from the defendant Robinson, and was in the Howards, though held by the Fairbanks Banking Company as their designated depositary, and to their order.

Had not the Howards expressly chosen the depositary in this case, and directed how the proceeds of the gold dust should be placed therein to their credit, then I think the contention on the part of the attorneys for the plaintiff would be well taken, and the authorities cited in their brief controlling. This conclusion is reached, believing the testimony given by Robinson to be reliable. His appearance and demeanor while upon the stand, his candor in answering questions, and the fact that the plaintiff Cook made the loan, in the sum of $10,000, upon his personal note, without requiring security, all lead me to the believe that his actions in this matter were with the one purpose of securing payment to employés who had been faithful to him and had worked some years without having received their merited reward.

The motion to dismiss the action as to the garnishee, the Fairbanks Banking Company, should be granted.