### DONLAN et al. v. TURNER, DENNIS & LOWRY LUMBER CO.

(Circuit Court of Appeals, Ninth Circuit. August 7, 1922.)

No. 3835.

1. **Sales ⬅7—Contract relating to lumber held a sale.**

Where plaintiffs agreed that, on payment by defendant of $20 per 1,000 feet, which payment was made, title to the lumber in plaintiffs' yard should vest in defendant, and defendant agreed to market the lumber and pay plaintiffs a percentage of the net proceeds above $20 per 1,000, and plaintiffs executed a bill of sale of this lumber, subject to a vendor's lien for any balance due under this agreement, there was a sale of the lumber, not a sales agency created.

2. **Insurance ⬅582—Destruction of lumber held to relieve buyer from obligation to resell and pay seller part of net profits.**

Under a contract by which plaintiffs sold lumber in their yard to defendant for $20 per 1,000 and a share of the profits, if any, to be made by defendant on a resale, and requiring plaintiffs to insure the lumber for $25 per 1,000 for the benefit of defendant, which they did, on destruc-

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tion of the lumber while in plaintiffs' yard, defendant was entitled to the $25 per 1000 insurance money, since by the destruction by fire it was relieved of any obligation to resell the lumber and pay plaintiffs a part of the profits.

**3. Sales ☞199—Rule that loss follows title subject to express intention of parties.**

The rule that the loss follows the title is merely evidence for arriving at the express intention of the parties.

Appeal from the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Suit in equity by Edward Donlan and Ben W. Henderson, copartners doing business under the firm name and style of Donlan & Henderson against the Turner, Dennis & Lowry Lumber Company. From the dismissal of the complaint, and a decree for defendant on the counterclaims (275 Fed. 71), complainants appeal. Affirmed.

The firm of Donlan & Henderson sued for money due and for an accounting. Defendant answered and counterclaimed.

In April, 1920, a contract, entitled "Contract of Sale," was made between Donlan & Henderson, called vendors in the contract, appellants here, and Turner, Dennis & Lowry Lumber Company, a corporation, called vendee in the agreement, appellee here, whereby Donlan & Henderson agree to sell and deliver to the vendee, and the vendee agrees to buy, all of the lumber "now owned by the vendors" in the pile at Fletcher Spur, and all lumber to be sawed, cut, and manufactured by them at Fletcher Spur until January 1, 1921. Upon the execution of the contract, vendee was to pay to vendors, as an advancement on the contract, $20 per 1,000 feet on all lumber "hereby sold and in pile at Fletcher Spur" in accordance with an inventory agreed upon. Vendee was also to loan to vendors $20,000 upon promissory notes of the vendors, and the vendee was to pay and advance to the vendors $20 per 1,000 feet on all lumber "to be hereafter sawed, cut, and manufactured by the vendors under and during the term of the contract," payments to be made monthly, based upon an inventory, $10 per 1,000 of such advancement to be applied and credited on the $20,000 promissory note above mentioned until the principal and interest thereof were fully paid. Vendors were to deliver f. o. b. cars at Fletcher Spur, as directed and ordered by the vendee. Vendee was to market and sell at the highest market price obtainable at the time of making the sale, and upon delivery upon cars the vendee was to pay vendors, "as the purchase price," the highest market price for which it was sold by them, less 15 per cent.

When each car of lumber was shipped, the vendor was to render an invoice, and to draw on the vendee for the amount of the invoice, less 15 per cent., less 2 per cent. trade discount, and $20 per 1,000 feet already paid in advance as hereinbefore provided. Upon payment of the advance of $20 per 1,000 feet, title to and possession of said lumber "should pass to the vendees and become their property," subject to the balance payable thereon to the vendors for the balance of the purchase price upon the completion of the terms and conditions on the part of the vendors. Vendors were to give a bill of sale and possession to the vendee, and the lumber was to be marked and designated as the property of the vendee from the time of marking and bill of sale. In the event of failure on the part of the vendors to carry out the contract, vendee was to have the right to use the machinery of the vendors to dress the lumber, "in order to protect themselves against loss on account of the amounts advanced under the contract." Vendors, at their own expense, during the life of the contract, were to keep insured against loss by fire "all lumber hereby sold, and which shall be in the yard, for $25 per 1,000 feet, the loss therein to be made payable to vendee."

Upon the execution of the contract the lumber company paid $60,000, and Donlan & Henderson gave to the lumber company two notes for $10,000 each,

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

dated April 16, 1920, due in 3 and 4 months, respectively. Donlan & Henderson also made a "bill of sale" to the lumber company for all the lumber then owned by Donlan & Henderson "in pile at Fletcher Spur," containing approximately 2,000.000 board feet. The bill of sale was given subject to "vendors' lien" upon all of the referred to lumber for balance due from the lumber company to Donlan & Henderson according to the contract hereinbefore referred to. In June, 1920, the lumber company paid Donlan & Henderson $20,000, and in August certain sums were advanced to Donlan & Henderson, to be repaid, with interest, and at both times Donlan & Henderson conveyed to the lumber company certain further quantities of lumber at Fletcher Spur. Donlan & Henderson bought 2,000,000 feet of lumber from one Smead, and insured it for $70,000, the price paid therefor, $20 per thousand feet of which was payable, in case of loss, to the lumber company as its interest might appear, the balance payable to Donlan & Henderson as their interest might appear. Thereafter another policy for $60,000 was taken out, as the amount of lumber in the yard increased. Payment in case of loss under the second policy was to be made to Donlan & Henderson, although Henderson testified that it was intended that the lumber company was to be named in the policy, but by oversight it was not included.

On August 3, 1920, more than 3,000,000 feet of lumber piled at Fletcher Spur was destroyed by fire. At $25 per 1,000 feet the insurance money would amount to over $75,000. Of this $70,000 was collected from the insurance companies by Donlan & Henderson, of which $60,000 was paid over to the lumber company, and the evidence is that the Donlan & Henderson copartnership promised to pay the balance as soon as it was received.

After a trial the court held that there was a sale of the lumber; that upon payment of the $20 per 1,000 feet the property was vested in the lumber company; that thereafter vendors had no interest in the lumber, except as it might be resold under the contract; that the destruction of the lumber by fire resulted in a loss to the lumber company of its investment and prospective profits; that vendors lost what they would have been entitled to upon the resale by the appellee under the contract, and that upon vendee's counterclaims vendors owed approximately $18,000, with interest. The complaint was dismissed, and decree in favor of appellee upon the counterclaims was rendered.

Harry H. Parsons and A. J. Violette, both of Missoula, Mont., and Gunn, Rasch & Hall, of Helena, Mont., for appellants.

Charles H. Hall and Walter L. Pope, both of Missoula, Mont., and Rees Turpin, of Kansas City, Mo., for appellee.

Before MORROW and HUNT, Circuit Judges, and BEAN, District Judge.

HUNT, Circuit Judge (after stating the facts as above). The position of the appellants is that, although the District Court was right in holding that the contract, together with the bills of sale, constituted an absolute sale and transfer of the title, it fell into error in refusing to hold that they could recover the market value of the lumber destroyed by fire, less advances made by the lumber company on the purchase and the percentages provided by the contract.

[1] We think the construction of the contract as one of sale and transfer of title by Donlan & Henderson to the lumber company was correct. Not only do the provisions of the agreement itself lead to that conclusion, but the acts of Donlan & Henderson, in executing on the same day the bill of sale whereby they bargained, sold, and conveyed to the lumber company all of the lumber then owned by them in pile at Fletcher Spur, make that construction the only reasonable one. Confirmatory evidence is found also in the provision making the

sale subject to a vendor's lien, for unless there was a sale there it was wholly unnecessary to insert such a clause.

[2] Looking into the agreement as one of sale, Donlan & Henderson were: (a) To deliver the lumber f. o. b. cars at Fletcher Spur; (b) to ship and render an invoice with draft; (c) to insure for the benefit of the vendee lumber company. On the other side, the Lumber Company was: (1) To advance to Donlan & Henderson $20 per 1,000 feet as the lumber was piled and stenciled; (2) to market and sell for the highest price obtainable at the time of sale; and (3) to pay vendors, as the purchase price under the contract, the highest price, less 15 per cent. The parties proceeded in apparent good faith, and the lumber company fulfilled with respect to the advance of $20 per 1,000 feet. A number of cars were shipped before the fire, but after August 3d, the day of the fire, it became impossible for the lumber company to market and sell the lumber.

The contract contained interdependent clauses—the buyer promising to pay the purchase price when it marketed and sold the lumber delivered for the highest price obtainable at time of sale. Payment was then to be made, not of any agreed, fixed price, but the money for which the lumber company sold, less percentages, and less $20 per 1,000 paid and advanced by the seller. Naturally the parties contracted with the idea of the continued existence of the lumber, yet destruction by fire was contemplated, and provision for the protection of the owners was made by making the insurance money payable to the lumber company at $25 per 1,000 feet. The question whether the difference between the advance of $20 per 1,000 and the $25 insurance was the subject of special consideration of the parties before the agreement was drawn is not of vital importance, as it is perfectly plain that the $25 per 1,000 insurance clause was agreed upon and must be upheld in determining the rights of the parties; and the only way to give the clause its expressed meaning is to hold that, if recovery can be had by the lumber company, it is not limited to the sums advanced under the contract, but to the sum named in the contract, $25 per 1,000 feet, payable in case of loss.

The result may be that Donlan & Henderson will have to stand other losses, if any there were; but we are constrained by the definite language used by the parties. However, there is considerable evidence from which it is to be inferred that our construction is but the same as the parties themselves put upon it. For example, Mr. Henderson, of Donlan & Henderson, testified that just before the fire a representative of an insurance exchange called upon him and solicited more insurance, but that he told the agent he did not care for additional insurance, as his firm expected to take a chance, and could not give it all to the others. He said, also, that he intended to take out more insurance, but failed to do so, and that they were underinsured.

[3] It is unnecessary to cite authority for the general rule that the loss follows the title, and that a promise to pay becomes fixed upon passing of title. But the rule is not without exceptions, for not infrequently are valid agreements made where the property is in one and the risk in another. It is really a matter of arriving at the intention.

of the parties as they have expressed themselves. Here the insurance clause of the contract is proof that in the event of loss by fire $25 per 1,000 was to be paid to the lumber company. The contract discloses on its face that the parties to it contemplated the possibility of fire which would render performance impossible, and accordingly they made provision therefor, and put the risk of loss on one of the parties to the contract. Until the sale by the lumber company, it was under no obligation to pay any more money to Donlan & Henderson. Indeed, as well pointed out by the District Court, conditions might have arisen where the lumber company would receive practically nothing. Suppose the market had fallen to panic prices, and that a sale by the lumber company brought in a sum less than the amounts which Donlan & Henderson owed that company, Donlan & Henderson would have received nothing. That seems clear; and by parity of reasoning, because of the destruction of the lumber, the lumber company is relieved of any obligation to sell and pay over.

In The Tornado, 108 U. S. 342, 2 Sup. Ct. 746, 27 L. Ed. 747, the court recognized that there are cases which fall within a rule that, where the stipulations of the contract are interdependent, defendant cannot be sued for the nonperformance of stipulations on his part which were dependent on conditions which the plaintiff has not performed. The court cited Taylor v. Caldwell, 3 Best & Smith, 826, to the effect that, in contracts in which the performance depends on the continued existence of a thing, a condition is implied that the impossibility of performance arising from the perishing of the thing shall excuse performance. The reason for that rule is that the law implies excuse because, from the nature of the agreement, it is clear that the parties have contracted on the basis of the continued existence of the particular person or chattel. See, also, Elgee Cotton Cases, 22 Wall. 180, 22 L. Ed. 863; Frank et al. v. Butte & Boulder Min. Co., 48 Mont. 83, 135 Pac. 904; Calcutta & Burmah S. S. Co. v. De Mattos, 32 L. J. Q. B. N. S. 322, 33 L. J. Q. B. N. S. 214; Dexter v. Norton, 47 N. Y. 62, 7 Am. Rep. 415; Taylor v. Caldwell, supra, 113 E. C. R. 824; Fragano v. Long, 107 Eng. Rep. 1040; Benjamin on Sales, pp. 409, 410; Mechem on Sales, § 1100; Williston on Sales, § 302.

Cases in which the agreement is that the purchase price becomes payable at once, but is to be determined by counting or measurement, or the doing of such acts, are to be distinguished. In Noyes v. Marlott, 156 Fed. 753, 84 C. C. A. 409, everything that the vendors had to do with the logs was completed when delivery was made at the place designated. There was no condition in the sale, and the only interest which the vendors had after delivery of the property was in recovering the price agreed upon as soon as the measurements were ascertained by the purchaser.

After careful consideration of the case, our conclusion is that the District Court properly construed the contract, and that the decree must be affirmed.

So ordered.