DONLAN & HENDERSON v. TURNER, DENNIS & LOWREY LUMBER CO.

(District Court, D. Montana. August 4, 1921.)

No. 892.

1. **Sales ⊂⟩7—Contract relating to lumber held one of sale, and not of agency to sell.**

A contract between plaintiffs, manufacturers of lumber, and defendant, which provided that on payment by defendant of $20 per thousand feet, which payment was made, title to all lumber in plaintiffs' yard should vest in defendant, to be evidenced by bill of sale, with a similar provision as to lumber afterward manufactured, and by which defendant agreed to market the lumber in the usual course and to pay plaintiffs a percentage of the net proceeds above $20 per thousand *held* not to create a sales agency, but to be a contract of sale, leaving no interest in plaintiffs except a contingent claim against defendant, dependent on its making sales at a profit, which contingency never happened as to lumber destroyed by fire while in the yard.

2. **Insurance ⊂⟩582—Seller not entitled to share in insurance taken for purchaser.**

Under a contract by which plaintiffs sold the lumber in their yard to defendant for $20 per thousand, with an agreement for a share of the profits, if any, made on a resale, and requiring plaintiffs to insure the lumber for $25 per thousand for the benefit of defendant, which they did, also taking additional insurance in favor of themselves, on the destruction of some of the lumber by fire while in the yard, plaintiffs *held* not entitled to any part of the $25 per thousand insurance, each party having the right, as it did, to insure its own interest.

3. **Joint adventures ⊂⟩4(4)—Division of expenses in carrying out agreement.**

Plaintiffs, manufacturers of lumber, sold the lumber in their yard and that to be manufactured to defendant for $20 per thousand feet, with an

---

⊂⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

agreement that defendant should market the lumber, which was to be loaded and shipped to the purchasers by plaintiffs, on defendant's orders, and that plaintiffs should receive a percentage of the profits of resale above the $20 per thousand. *Held*, that where defendant ordered certain cars shipped to its own order, and before resale and reconsignment, demurrage had been incurred on the cars, such demurrage was not chargeable as an expense against plaintiffs' share of the profits of resale, though increased freight, due to reconsignment, was so chargeable.

At Law. Action by Donlan & Henderson against the Turner, Dennis & Lowrey Lumber Company, a corporation, of Jackson, Mo., with equitable defense. Decree on accounting.

Harry H. Parsons and A. J. Violette, both of Missoula, Mont., for plaintiffs.

Hall & Pope, of Missoula, Mont., and Rees Turpin, of Kansas City, Mo., for defendant.

BOURQUIN, District Judge. [1] Each party alleges the other's defaults in performance of a somewhat novel written contract made April 16, 1920, which contract is as follows: That plaintiffs "sell" and defendant "buys" some 2,000 M feet of lumber in a local yard and all there "to be * * * cut" to January 1, 1921; that immediately "the vendees shall pay to the vendors, as an advancement hereon, the sum of $20.00 per M feet on all" existing lumber, and "shall also pay and advance" the like sum on future lumber, on inventory by the 10th of each month of piles in the yard; that "the vendees shall also loan to the vendors" $20,000, for which vendors shall execute their note; that to payment of the note, one-half the advance due on future lumber shall be applied by vendee "until * * * fully paid"; that payments or advances and loans shall bear 7 per cent. interest per annum "until * * * fully paid," computed and adjusted monthly upon the "balance thereof remaining against the vendors"; that upon "payment of the advance of $20 * * * the title to and possession of said lumber shall pass to the vendees and become their property, subject only to the balance that will be payable to the vendors for the balance of the purchase price, * * * and the vendors shall give a bill of sale to the vendees therefor and possession thereof, and said lumber shall be marked and designated as the property of the vendees, from the time it is so marked and possession given;" that vendors lease the yard to vendees, subject to the former's use for purposes of the contract; that if vendors fail to perform, vendees have right to use vendors' planer at the yard, "to dress said lumber in order to protect" vendees "against loss on account of the amounts advanced hereunder"; that vendors shall manufacture and grade the lumber in accord with specified rules and standard, hold "vendees harmless against any claim or loss which may arise under said rules or standard," at their expense insure for $25 per M feet all lumber sold and in yard, loss payable to vendee, and "shall deliver said lumber f. o. b. cars" at the yard, "either dressed or rough, as directed and ordered by the vendees"; that the "vendees shall market and sell said lumber for the highest market price obtainable at the time of making such sale, and upon the

delivery thereof on cars as aforesaid * * * and when each car is shipped, the vendors will render to the vendees an invoice and the original bill of lading, and will draw on them for the amount of such invoice, less 15 per cent., less 2 per cent. trade discount, and less $20 per thousand feet already paid and advanced, * * * which draft the vendees agree to honor and pay when presented." The evidence is without material conflict, and the facts, brief and direct, are as follows: There was due performance by both parties, and on August 3, 1920, the lumber in yard, on which $20 per M feet had been paid and bills of sale executed, less some 280 M feet shipped, was some 3,055 M feet. Plaintiffs' unpaid loans, including some $11,000 additional loan in June, represented by notes due at intervals to October 1st, aggregated some $20,000, and the insurance secured by plaintiffs on this and some other of their lumber was $70,000, payable to defendant as its interest might appear and $60,000 payable to plaintiffs. That day an accidental fire destroyed some 3,015 M feet of said lumber in the yard, and also other lumber of plaintiffs. The parties continued in performance, but market conditions unfavorable, both parties in need of money, some dispute in reference to insurance, and defendant's attitude, first plainly manifest after the fire, that it was but a selling agent for a commission, created dissatisfaction, which culminated in this action commenced on December 20, 1920.

In the meantime plaintiffs had collected all the insurance money, paid $60,000 of it to defendant, at first disputed defendant's right to the stipulated $25 per M feet of the contract, later appeared to acquiesce, but had not accounted for the balance of it at time of action commenced. It appears that from the beginning plaintiffs were less clear than defendant in conception of the nature of the contract, the relations and the rights it created; and so when defendant's attitude aforesaid developed by self-serving statements mainly, after the fire, plaintiffs either did not perceive its significance, or were too ill advised to contradict or oppose it, for they seemed to acquiesce till suit brought.

After the fire defendant paid for new-cut lumber inventoried in piles and bills of sale given as follows: $20 per M for some 514 M feet of August cut, by cash without application of any of it to payment of loans to plaintiffs and overdue; the like in respect to some 401 M feet of September cut; $20 per M for some 700 M feet of October cut, by crediting it to plaintiffs' account in respect to the balance of insurance money withheld. As the 10th of December approached, both parties indicated intent to perform in respect to the November cut, but neither performed.

Throughout the contract, market conditions were unfavorable, and both parties, in hope of improvement. acquiesced in few resales and shipments. Ten cars were shipped before the fire, and one car after it aggregating some 322 M feet. Some of these cars were ordered and shipped before defendant had resold the lumber, and in consequence before purchasers were found demurrage was incurred in amount some $600.

When plaintiffs commenced this action they attached all said lumber in the yard, and when defendant answered it also attached the lumber.

The pleadings are in accord with the respective theories of the parties, and as therein both are in the main in error, and as the action (brought at law, with an equitable defense interposed in the answer, and accounting demanded in the reply) has been tried in the nature of an accounting in equity in respect to a divisible, installment contract, the pleadings need be no more than indicated by brief reference to the theories advanced. Plaintiffs' is that the contract is of sale for resale, and that they are entitled to recover what they might have received if the burned lumber had been resold, and to recover the $20 per M feet of the October cut which defendant credited to balance of insurance withheld; and plaintiffs evidently contemplate some accounting in future in respect to said lumber now in yard, when resold by defendant. Defendant's theory is that the contract is of agency for sale, and that it is entitled to recover all factor's advances (the $20 per M feet paid), expenses, the balance of insurance, and the loans, terminating the contract and accomplishing final settlement. Both parties abandon certain claims for damages for lost profits, alleged in the pleadings.

To first dispose of defendant's equitable defense of mistake in reducing the contract to writing, and its claim of practical construction in accord with its theory of agency, the mistake was first asserted by it in its amended answer, months after the contract made, performance, destruction of lumber, suit commenced, and is too late. Further, the evidence in support of it is too trifling to warrant discussion; and likewise of the evidence of practical construction, consisting of defendant's belated self-serving statements to that end.

Proceeding to the character of the contract, it has all the elements of sale, and only enough of the indicia of agency to give some color to a claim of the latter. The lumber inventoried and the $20 per M paid, the absolute property in lumber and money respectively vested in defendant and plaintiffs beyond return, recall, or repayment. Thereafter plaintiffs have no interest in the lumber, save that it be resold for the purposes of the contract, and thereafter the lumber could be attached by defendant's creditors, but not by plaintiffs'. Resale is in accordance with defendant's judgment of time, place, person, price, and terms, save to be in reasonable time and for the highest reasonably obtainable price. The proceeds are defendants, as is any loss of them, plaintiffs having no interest therein, but only in the price as the measure of what, if anything, becomes due them from defendant on resale. Defendant receives the usual trade discount of a buyer, whether or not it concedes it to its vendee on resale. The parties intended and accomplished a sale. The consequences are clear. As owner of the lumber burned, defendant loses its investment therein and its prospective profits, but indemnified to the extent of the stipulated insurance of $25 per M feet, and, as owner of the lumber not burned, it is obligated to resell in accordance with the contract. In respect to neither is it entitled to recover from plaintiffs any of the $20 per M by it paid. Nor are plaintiffs entitled to recover what they might have received had the lumber been resold before burned. They sold it to defendant for $20 per M and its promise to resell, whereupon, if for a price in ex-

cess of the amount due defendant by virtue of the contract, viz. $20 per M, plus 17 per cent. of the resale price, defendant would pay to plaintiffs the equivalent of such excess. Before resale, no money was due plaintiffs; no debt to them existed. If resale was for an excess price as aforesaid, money would then be due plaintiffs; a debt to them would then be created. The happening of resale alone would determine what, if anything, was due plaintiffs, the amount, and the time of payment. Defendant's promise to pay was not absolute, but was conditional, and plaintiffs' right to payment was not vested, but was contingent.

By reason of destruction of the lumber the condition failed, the contingency did not happen, and both the promise and the right expired.

For in these circumstances the law is that the failure of the event to happen without fault of the promisor prevents creation of a money debt, terminates the promisee's expectancy of payment, and excuses failure to perform the promise. See cases, 13 C. Jur. 114, 631. A like principle is that, if by the express or implied terms of the contract, the promise is conditional on possibility of performance, and performance becames impossible without fault of the promisor, his liability is discharged. See cases, 13 C. Jur. 640; 7 Halsbury, Laws of England, 429. Still another like principle is that, if expressly or by implication to effectuate an intent presumed in good faith and fair dealing, the parties contemplate continued existence of the subject-matter of the contract in order to accomplish performance, its destruction without fault absolves both from further performance in so far as dependent upon such continued existence. See cases, 13 C. Jur. 643; 7 Halsbury, Laws of England, 430. These principles are controlling here. The sale of lumber made, it was not known that anything would become due plaintiffs, nor amount, nor when. All were contingent, which to determine defendant promised to resell the lumber. It burned, and resale, before possible, became impossible. The contingencies did not happen; the determination was not made. Defendant's promise became impossible without its fault. It is clear the parties contemplated the continued existence of the lumber for resale and to determine, all said contingencies, because by the contract thus only were they to be determined.

It will be conceded plaintiffs' right to any payment, and how much, depended upon resale for a price in excess of the amount due defendant as aforesaid, and it will be conceded that if values depreciated by reason of time, weather, borers, insects, and the like, plaintiffs would lose accordingly. That is, if because thereof the lumber resold for no more than due defendant as aforesaid, though worth more at time of sale, plaintiffs would be entitled to no payment from defendant.

And the same principle that in whole or in part would discharge defendant's promise in these circumstances of partial destruction of the lumber or of its value in whole discharges it in the instant circumstances of fire and total destruction of the lumber. Both parties understood this, and both insured. The 2,000 M feet first sold to defendant contemporaneously cost plaintiffs $35 per M feet. They received

$20 per M from defendant, agreed to insure in defendant's interest for $25 per M and did insure for $35 per M the amount they had paid for the 2000 M. Later they secured $60,000 more insurance, aggregating on all the lumber $55,000 more than the $25 per M they agreed to carry for defendant on the lumber burned, and all of which they collected. That some of it was on lumber not sold to defendant does not detract from the implication in respect to their understanding aforesaid.

[2] It is urged by plaintiffs that, as defendant paid them but $20 per M for the lumber burned, and thereon claim the stipulated insurance of $25 per M, $5 thereof is profit which on some equitable principle it ought to share with plaintiffs, even as though secured by a resale of the lumber. This cannot be maintained. In any view of the parties' respective interests in the burned lumber, even as other coowners, each could insure their or its interest, without liability to share proceeds with the other.

[3] Of their respective interests, they were of the nature of joint adventurers in the proceeds upon resale of the lumber. If for any fortuitous reason, including market conditions, resale was without excess as aforesaid, plaintiffs received nothing; if resale was with excess, plaintiffs received its equivalent; if resale was for less than due defendant, or if no resale could be made, defendant suffered loss accordingly. This determines the chief issue. In the matter of demurrage and excessive freight, the contract bases plaintiffs' right to payment on resale, on the resale price, less express deductions, and less the implied deduction, it is agreed, of freight. Defendant ordered lumber loaded and shipped before sold, and plaintiff complied.

The cars were consigned to defendant at a destination by it named, and when it resold the lumber the cars were reconsigned to the destination of the purchasers. In consequence demurrage was incurred and freight was increased over that of an original consignment to destination of the purchasers. For demurrage or car rent, defendant is not entitled to credit. It is not freight, and freight is the only expense of resale that is by virtue of the contract a credit in defendant's behalf. Shipment before resale may be a departure from the contract, but although therein plaintiffs waived draft upon defendant for the invoice price, they did not also waive the benefit of the contract's protection to them against all expense of marketing the lumber save freight.

The increased freight is "freight," and is a proper credit in defendant's behalf. When plaintiffs dispatched cars before sale, they knew the likelihood of increased freight, and acquiesced therein. All of these shipments have been resold, save one now "in storage" in St. Louis. Defendant assumes to credit plaintiffs with their dues in respect to them from a time subsequent to resale, on the theory it necessarily awaited freight bills.

The contract requires defendant to pay plaintiffs' draft upon shipment. Plaintiffs waived this in respect to lumber shipped before resold, but are entitled to credit from date resale made, whether or not defendant ever received freight bills.

In the matter of the loans, all overdue, defendant is entitled to recover them in amount $16,171.09, deducting credits to plaintiffs, consisting of exchange paid and conceded and amounts due upon resales of lumber.

The notes provide for reasonable attorney's fees, a cross-complaint being equivalent to a "suit," and $286.75 are allowed. This is one-half what the local rule in general would allow, but defendant's erroneous attitude in respect to the character of the contract tended to precipitate the litigation and requires the lessening of the ordinary allowance.

In the matter of the insurance of $25 per M for defendant, by plaintiffs collected and in part withheld, defendant is entitled to recover it with interest from date collected, in total amount $1,626.67. Against insurance withheld, defendant properly credited to plaintiffs the payment for the October cut of lumber.

In the matter of interest, defendant is entitled to it in accordance with the contract, but to no interest in respect to payments for lumber, save if and when worked out upon resale.

Herein no account is taken of lumber paid for, bills of sale executed, existing, and not resold, including the car in storage, save to determine it is the property of defendant, subject to the contract. Computations are to August 10, 1921, and to conform to the decision the account discloses (and the parties virtually so agree) that $18,084.51 are due to defendant from plaintiffs. In equity, costs are discretionary, and in view of the circumstances it is believed neither party is entitled to costs.

Decree accordingly.