## TURNER, DENNIS & LOWRY LUMBER CO. v. ST. PAUL FIRE & MARINE INS. CO. et al.

(District Court, D. Montana. May 17, 1923.)

No. 1019.

**1. Insurance ⬳146(1)—Policies construed as other contracts.**

Fire insurance policies are contracts, subject to the law of contracts, and are construed and interpreted as other contracts are, though subject to some special rules or principles evolved by their peculiar character and the exigencies of the insurance business.

**2. Insurance ⬳246—Contract to maintain insurance for benefit of another held not to create agency; "independent contractors."**

An agreement by sellers of lumber, who remained in possession, with an interest in its resale, to keep insurance on the lumber to a stated amount, loss payable to buyer, did not make them buyer's agents in procuring insurance, but in doing so they were "independent contractors," and the insurer had no contractual relation with the buyer as respects right to cancellation by agreement between seller and insurer.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Independent Contractor.]

**3. Insurance ⬳246—Consent of third person beneficiary not essential to cancellation.**

A fire policy may be canceled by mutual agreement of the parties thereto, and the consent of a third person, to whom loss is made payable, is not essential to such cancellation.

**4. Insurance ⬳246—Policy held subject to cancellation by mutual agreement of parties.**

Where among the conditions of a policy was one authorizing cancellation by insured at any time and by insurer on five days' notice, a stipulation that "the conditions hereinbefore contained" should not apply to one to whom loss was made payable *held* not to protect such beneficiary from cancellation of the policy by mutual agreement of insurer and insured.

**5. Insurance ⬳311(1)—Policy held not avoided by chattel mortgage as to one to whom loss was made payable.**

Where it was a condition of a policy that it should be void if the property was or should become incumbered by chattel mortgage, a chattel mortgage on part of the property *held* to avoid the policy as to insured, but not as to one to whom loss was made payable, which by stipulation was protected from the conditions of the policy.

At Law. Action by the Turner, Dennis & Lowry Lumber Company against the St. Paul Fire & Marine Insurance Company and others. Judgment for defendants.

Hall & Pope, of Missoula, Mont., and Rees Turpin, of Kansas City, Mo., for plaintiff.

John E. Patterson, of Missoula, Mont., and E. Eugene Davis, of Spokane, Wash., for defendant insurance company.

H. H. Parsons, of Missoula, Mont., and Gunn, Rasch & Hall, of Helena, Mont., for defendants Donlan & Henderson.

BOURQUIN, District Judge. In this action upon a standard fire insurance policy the pleadings, issues tried in course of trial, and competent evidence warrant brevity and the following findings and con-

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

clusions (the Supreme Court long since ruled that findings eo nomine, thus informally in opinion or decision, require full review on error):

Between plaintiff and defendants Donlan & Henderson was a contract for purchase by the former of the latter's lumber, and wherein the vendors agreed at their expense to maintain on the purchased lumber fire insurance to $25 per M feet, loss payable to the vendee. See the case between them, 282 Fed. 421, 275 Fed. 71.

At the time material herein, some 1615 M feet so purchased and in which the vendors still had a contingent interest, and some 941 M feet owned by the vendors, were piled in the vendors' yards. Aside from this policy in suit, this lumber was overinsured in respect to both owners and in respect to the vendors' engagement to insure as aforesaid. However, a policy having been canceled by an insurer, Shlick, defendant company's agent, offered to replace the insurance, and the vendors accepted. Accordingly the policy in suit was issued by the defendant company on July 25, 1921, the premium was charged to the vendors, and the agent delivered the policy to the vendee.

This policy insures Donlan & Henderson in amount not exceeding $20,000 against fire loss to lumber described in a cover slip—"their own * * * or sold but not removed," and while piled in their yards. Other slips are attached, one of watchman warranty, and one of "loss payable" to plaintiff, not to exceed $25 per M, its "equity" therein.

Among the conditions of the policy are that the entire policy shall be void if the property be or become incumbered by chattel mortgage, that the policy "shall be canceled at any time at the request of the insured, or by the company by giving five days' notice of such cancellation," and that "if, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee, or of any person or corporation having an interest in the subject of insurance, other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached, or appended hereto."

About three weeks after policy issued, Shlick phoned to Henderson request for the premium, and some conversation followed in reference to which is no real conflict. Henderson testifies he told Shlick that he "would have to look" to plaintiff for the premium; "that we were not writing insurance for" plaintiff. On cross-examination, "I stated this: That unless they returned the policy—unless I got the policy for us—I didn't feel like paying the premium." He adds: "That was as near as I came to canceling the policy; now, that is my recollection of it;" that he knew nothing of the terms of the policy; "personally we didn't claim that policy" until they filed their cross-complaint herein; that as far as they were concerned they had no insurance in defendant company.

Shlick testifies Henderson said: "I am not going to take any more insurance for" plaintiff, "and we are not going to pay for any policies we haven't got, and if you wrote such a policy for us you can cancel it." He further testifies he then, on August 16, 1921, canceled the premium charge upon his records, and wired plaintiff that "Donlan

Henderson canceled St. Paul policy  *  *  *  return policy at once unless you want this transferred in your name and will pay premium."

Plaintiff's counsel, by it advised of the telegram, opened a controversy with defendant company and its agents in respect to power to cancel so far as plaintiff was concerned, in view of the slip loss payable to it, and on August 24, 1921, "to complete" its records, the insurer mailed to plaintiff due notice of cancellation on five days' notice. In the mean time plaintiff tried and failed to secure additional insurance. August 28, 1921, fire destroyed all the lumber. At no time did any one pay or offer to pay the premium on this policy. When this policy issued, prior thereto and to the fire, that part of the lumber owned by Donlan & Henderson was subject to a chattel mortgage to secure their note for $25,000, and all of the lumber was subject to this plaintiff's attachment issued in the reported case aforesaid, was in the custody of the marshal, and the facts of the attachment and custody were noted upon the policy. In view of the premises, it is believed and found that timely before the fire and on August 16, 1921, this policy was canceled or rescinded by mutual consent or agreement by and between Donlan & Henderson and defendant company, and canceled, not only as to them, but as to plaintiff as well.

[1] Fire insurance policies are contracts, involve and are subject to the law of contracts, and are construed and interpreted as other contracts are, though subject to some special rules or principles evolved by their peculiar character and the exigencies of the insurance business. The presumption is that this policy reduces to writing the express or implied agreement of the brief oral negotiation between Donlan & Henderson and Shlick.

[2] In so far as it is for the benefit of plaintiff, it is to be imputed to the contract between plaintiff and Donlan & Henderson, wherein the latter engaged not to insure plaintiff nor for plaintiff, but to maintain insurance equal to $25 per M, loss payable to plaintiff. In performance, Donlan & Henderson were in no sense plaintiff's agents, actual or assumed, previously authorized or subsequently ratified but were independent contractors, with all the latter's discretion, judgment, and control in respect to methods and instrumentalities. Their right of selection of insurers, policies, terms, and premiums, of placing, modifying, rescinding, and renewing insurance, was exclusive, and with which plaintiff could not interfere.

And this is true, whether plaintiff's status was a mere payment appointee under the loss payable slip, or was an insured under the "sold, but not removed," cover slip. (It is doubtful if the latter was intended, though, as one of the class incidentally insured, plaintiff would have the benefit.) In both contingencies the rights and powers of the independent contractors are the same and plenary. In both is the ordinary case of a contract that may in part inure to the benefit of a third party, and rescinded before invoked or acted upon by the third party. The case is like in principle to that of a warehouseman, commission or other broker, bailee, or vendor who gratuitously, for a consideration, or for his own protection, insures goods in his possession. Such policies are ambulatory, shifting from goods to goods, and from owner to owner, as goods or titles change.

[3] Although owners may have a contingent benefit therein, before loss incurred, at least, the insured possessor of the goods and the insurer have exclusive power over the contract or policy, and may rescind it, even as they made it. No principle requires that, to make or to rescind, the consent of perhaps many shifting owners of changing goods shall be secured. A possessor of goods, bound to shelter and protect them, may lease premises for that purpose, and, of course, change premises and lease at his discretion. No reason is perceived why he may not likewise change in respect to the shelter and protection of any insurance that he may place upon the goods. Even an agent not merely to insure, but to continuously maintain insurance, has this unlimited discretion.

[4] Nor is plaintiff's case bettered by the aforesaid protective stipulation that "conditions hereinbefore contained" shall not apply to those who, with the insurer's consent, have an interest in the policy and subject of insurance. It seems clear enough that stipulation protects plaintiff (by reason of the cover slip) from cancellation of the policy at the request of insured or on five days' notice by insurer; for these compulsory cancellations are of the "conditions hereinbefore contained." The instant cancellation by mutual consent is not of that compulsory character, is not debarred by them, and is not of the said "conditions hereinbefore contained." This policy or contract was canceled or rescinded by mutual consent or agreement by and between insurer and insured.

Taking the Shlick-Henderson conversation as a whole and in connection with the circumstances, it appears Henderson repudiated the contract or policy ostensibly because it contained insurance for plaintiff and in excess of any the vendors were bound to secure, refused to perform his part of it (that is, pay the premium), and gave leave to Shlick to cancel it. Note that he did not request Shlick to cancel the policy; he did not invoke his right to thus compel Shlick to cancel it; but he only tendered to Shlick an option to cancel it.

In that situation the defendant company was not under compulsion to cancel the policy, but it rightfully could and did accept the tender, consent and agree to the proposal, and exercise the option. The result was a clear case of rescission or cancellation by mutual consent and agreement. And this was sufficiently made known by failure to secure and return the policy to Donlan & Henderson in lieu of cancellation, and by notice to plaintiff. The policy thus canceled, the contract rescinded was not revived by Shlick's telegram that "Donlan Henderson canceled St. Paul policy," nor by defendant company's precautionary action to cancel on five days' notice to plaintiff.

[5] This determines the case for defendant company, but to dispose of all issues it is held that the chattel mortgage, though on only part of the lumber, "incumbered the property" within the ordinary meaning of this term in the policy, and, as in the policy provided, this failure of condition precedent renders the policy void so far as Donlan & Henderson are concerned, but otherwise in respect to plaintiff. The latter's rights are preserved by the quoted protective stipulation aforesaid.

In the matter of the watchman warranty, in the circumstances of attachment and marshal's custody of the lumber, recognized by the policy, if said warranty is not waived, the evidence does not preponderate in favor of the defense, does not prove that insured failed to exercise "due diligence * * * to keep a continuous watch" as by the warranty required.

The foregoing is adopted as the special findings and conclusions of the court in this case. Costs to defendant company.

Judgment accordingly.